**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRED C. GALVIN,**<br>**Plaintiff,**<br>**v.**<br>**CARLOS DEL TORO, Secretary of the Navy, et al.**<br>**Defendants.** | **Civil Action No. 21-1813 (JDB)** |

**MEMORANDUM OPINION**

Plaintiff Fred C. Galvin had a distinguished career in the Marine Corps, including multiple tours in Iraq and Afghanistan, and he retired in 2014 at the rank of major. See Compl. [ECF No. 1] ¶¶ 3, 8–9, 24–25, 33. Despite being considered for promotion four times, however, Galvin never attained the rank of lieutenant colonel. Id. ¶¶ 27–28, 32–33. He contends that these non-promotions were the result of improper adverse fitness reports included in his service record. Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss [ECF No. 14] ("Pl.'s Opp'n") at 1. But although his record was eventually corrected and a special selection board ("SSB") was convened to consider Galvin for retroactive promotion, Compl. ¶¶ 36–40, he still was not promoted to lieutenant colonel, id. ¶ 49. Alleging that the SSB did not provide any reasoning and that its decision was otherwise arbitrary or capricious, Galvin now challenges his non-promotion under both the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, and 10 U.S.C. § 628(g)(2), which provides for judicial review of SSB decisions. Compl. at 13–14.

The government has moved to dismiss Galvin's APA claim for lack of subject-matter jurisdiction and for failure to state a claim, contending that 10 U.S.C. § 628 prevents Galvin from concurrently seeking relief under the APA. See generally Defs.' Mem. of P. & A. in Supp. of

Defs.' Partial Mot. to Dismiss [ECF No. 12-1] ("Gov't Mot."). For the reasons set forth below, the Court ultimately agrees with the government: Galvin may not seek relief under both § 628 and the APA. The Court will accordingly grant the government's partial motion to dismiss for failure to state a claim.

## Background

### I. Statutory Context

The present lawsuit deals with the system by which the United States military promotes its officers and, more particularly, how and when those officers may seek judicial review of promotion decisions. In general, promotions are handled by "selection boards," also called "promotion boards," e.g., 10 U.S.C. § 628(k), which are subject to detailed requirements set forth in Chapter 36 of Title 10 of the U.S. Code. See id. §§ 611–18. But sometimes the promotion board process goes awry, and the law accounts for this possibility. If the Secretary of the relevant military department determines that an officer was not considered by a promotion board due to "administrative error," or that "there was material unfairness with respect to" a candidate "who was considered . . . by a promotion board but was not selected," then the Secretary "may convene a special selection board . . . to determine whether that person . . . should be recommended for promotion." Id. § 628(a)(1), (b)(1). In some cases, as here, the Secretary will convene a special selection board when an officer's record is corrected to remedy a defect that may have affected a promotion board's decision. See id. § 628(b)(2).

Once convened, the SSB "consider[s] the record of the person . . . as that record, if corrected, would have appeared to the [promotion] board that considered him" and then "compar[es] [it] with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him." 10 U.S.C. § 628(b)(2). The SSB submits a report

to the convening Secretary, id. § 628(c), who then forwards the report with any attached comments to the Secretary of Defense for approval, see id. § 618(a), (c) (incorporated by reference by 10 U.S.C. § 628(c)(2)); Exec. Order No. 12,396, § 1(a), 47 Fed. Reg. 55897, 55897 (Dec. 9, 1982) (vesting the President's authority to approve such reports with the Secretary of Defense).

Section 628 also specifically provides for judicial review of two kinds of decisions relating to SSBs. First, a court "may review a determination by the Secretary . . . not to convene a special selection board." 10 U.S.C. § 628(g)(1)(A). If the court sets aside the Secretary's decision, "it shall remand the case to the Secretary concerned, who shall provide for consideration by such a board." Id. § 628(g)(1)(B). Second, § 628(g)(2) provides for review of "the action of a special selection board . . . or an action of the Secretary of the military department concerned on the report of such a board." Both categories of decision may be set aside "only if the court finds the determination to be arbitrary or capricious; not based on substantial evidence; a result of material error of fact or material administrative error; or otherwise contrary to law." Id. § 628(g)(1)(A) (cleaned up); see id. § 628(g)(2).

The statute then places two restrictions on review of "claim[s] based to any extent on the failure of a person to be selected for promotion by a promotion board." Id. § 628(h). First, § 628(h)(1) imposes an exhaustion requirement: no court "may . . . consider the claim unless the person has first been referred by the Secretary concerned to a special selection board . . . and acted upon by that board." Id. § 628(h)(1); see also Gilbert v. James, 134 F. Supp. 3d 42, 52–53 (D.D.C. 2015). Paragraph (h)(2) then restricts what relief courts hearing § 628(g) suits may grant: no court "may . . . except as provided in subsection (g), grant any relief on the claim." 10 U.S.C.

§ 628(h)(2).[1] Paragraph (h)(2) thus clarifies § 628(g)(1)(B)'s mandate—that remand is the only relief available in suits under § 628(g)(1)—and it engrafts that limitation onto suits under § 628(g)(2) as well. See Gilbert, 134 F. Supp. 3d at 53 ("[W]here a claimant is considered by an SSB, a reviewing court may, pursuant to § 628(g)(2), set aside any resulting action . . . but the relief, again, is limited to remand of the case for reconsideration by an SSB[.]" (emphasis removed) (citing 10 U.S.C. § 628(h)(2))).

Also relevant here is the APA, which provides that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. But the APA's generic cause of action has its limits. The APA does not apply "to the extent that statutes preclude judicial review," 5 U.S.C. § 701(a)(1), nor does it waive the United States's sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," id. § 702(2). Finally, only "final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704. The APA is thus only a fallback cause of action, neither displacing other restrictions on judicial review nor "duplicat[ing] existing procedures for review of agency action." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).

## II. Factual Background

The present lawsuit ultimately originates in events that occurred nearly fifteen years ago. In 2007, Galvin deployed to Afghanistan with Marine Special Operations Company Foxtrot, an elite special ops force trained and led by Galvin. Compl. ¶¶ 6–9. On March 4, 2007, Galvin and twenty-nine Marines under his command were ambushed in the Afghan village of Bati Kot. Id.

[1] The paragraph also includes an exception not applicable here: "unless the person has been selected for promotion by a special selection board . . . and the report of the board has been approved by the President." This exception makes sense given paragraph (h)(2)'s purpose and effect: to ensure that civilian courts do not directly countermand the military's internal promotion decisions. The potential for such inter-branch conflict evaporates if (and only if) a plaintiff has already been selected by an SSB and then the President.

¶ 10. Shortly after the Marines extricated themselves from the village, however, reports began circulating on the internet stating that, rather than escaping an attack by enemy forces, Galvin and his men had "indiscriminately fired on civilians, killing and wounding many." Id. ¶ 11. Naturally, these reports led to public outcry, an investigation by an Air Force colonel, and specific condemnation by Afghan President Hamid Karzai that spurred large anti-American protests around Afghanistan. Id. ¶ 13–14. Shortly thereafter, Galvin was relieved of his command and expelled from Afghanistan, id. ¶ 17, and in April 2007, he received an "adverse fitness report" that was "highly critical of [Galvin] for the Bati Kot ambush," id. ¶ 19.

In 2008, a Court of Inquiry ("COI") convened to investigate the incident at Bati Kot. Compl. ¶ 20. After three weeks of evidence-gathering, the COI exonerated Galvin and his men, id. ¶ 21, rejecting the conclusions of the earlier investigation and characterizing his redeployment as having been "based, in large part, on unsubstantiated allegations" and "influenced by the high level of command, media, and governmental attention focused on" the Bati Kot incident, id. ¶ 22 (citation omitted). Despite this result, however, the adverse fitness report Galvin had received remained in his service record, and accusations that Galvin's men had massacred civilians continued to appear in major media sources. Id. ¶ 23, 26.

In August 2010, Galvin was considered for promotion to the rank of lieutenant colonel, but the promotion board did not select him, a decision he attributes to the ongoing (false) accusations of misconduct and the 2007 adverse fitness report still in his record. See Compl. ¶ 26–28; Pl.'s Opp'n at 1. Nor was he recommended for promotion in 2011, 2012, or 2013, decisions he contends were further influenced by a second (allegedly improper) adverse fitness report from June 2011.

Compl. ¶¶ 31–32; Pl.'s Opp'n at 1. After his fourth non-promotion, Galvin involuntarily retired from the Marine Corps as required by statute.[2] Id. ¶ 33.

Since his first non-promotion in 2010, Galvin repeatedly petitioned the Board for the Correction of Naval Records ("BCNR") to expunge the aforementioned adverse fitness reports from his service record.[3] Compl. ¶¶ 34–35. On October 30, 2018, the BCNR agreed with Galvin, recommending that the Secretary of the Navy remove both reports, vacate Galvin's non-promotions, and convene a special selection board to reevaluate Galvin for promotion based on his record as it should have appeared in 2010.[4] Compl. ¶ 36, 39, 42; Compl. Ex. A [ECF No. 1-1] at 11–12. The Secretary approved this recommendation on January 2, 2019. Compl. ¶ 40; Compl. Ex. A. at 12. Accordingly, an SSB convened on April 23, 2019, to consider Galvin's corrected record and determine whether he should be retroactively promoted to lieutenant colonel. Compl. ¶ 49. Despite the corrections in his record, however, the SSB did not select him for promotion, a decision given final approval by the Office of the Secretary of Defense on July 11, 2019. Id. Galvin alleges that he was never provided an explanation for this decision, instead simply being told that he "w[as] not selected for promotion to the grade of lieutenant colonel" by the SSB. Id. ¶¶ 49–50.

[2] A major in the Marine Corps "who has failed of selection for promotion to the next higher grade" twice must either be discharged or retire. 10 U.S.C. § 632(a). Only non-promotions that occur while the candidate is "in or above the promotion zone," a zone determined by the length of time the officer has been in his present rank, count towards this two-strike provision. 10 U.S.C. § 627; see Gov't Mot. at 3 n.2. It appears that Galvin's first two non-promotions came when he was "below zone."

[3] The BCNR is a "board[] of civilians" that assists the Secretary of the Navy with "correct[ing] any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); see also 32 C.F.R. §§ 723.1–723.11 (establishing jurisdiction of and procedures for BCNR).

[4] Because the SSB was directed to put itself in the shoes of the 2010 promotion board, Galvin's 2011 adverse fitness report may be irrelevant to the SSB's decision and thus to this lawsuit. The parties appear to disagree on this, however, compare Gov't Mot. at 6 n.7, with Compl. ¶¶ 30–32, and the Court welcomes further briefing on this point during summary judgment proceedings.

Galvin brought the present lawsuit against the Secretary of the Navy and Secretary of Defense on July 7, 2021,[5] asking the Court to set aside the SSB's non-promotion decision and to remand the matter to the Secretary of the Navy for further proceedings. Compl. at 14. Galvin sought this relief under both the APA and 10 U.S.C. § 628(g). Id. ¶¶ 53–61. The government then filed the instant partial motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim, arguing that the § 628(g) cause of action—which the government does not challenge—precludes Galvin from concurrently relying on the APA. See Gov't Mot. at 8–12. Briefing on the government's motion is now complete, and it is therefore ripe for decision.

**Legal Standard**

The party invoking the limited jurisdiction of a federal court has the burden to prove that jurisdiction is proper. E.g., Georgiades v. Martin–Trigona, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984). Thus, "[t]o survive a motion to dismiss for lack of subject-matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1), a plaintiff must establish a court's jurisdiction by a preponderance of the evidence," Schieber v. United States, Civ. A. No. 21-1371 (JDB), 2022 WL 227082, at *4 (D.D.C. Jan. 26, 2022) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)), while "to survive a motion to dismiss for failure to state a claim . . . the 'complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face,'" id. (second alteration in original) (some internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When considering a motion to dismiss the complaint, whether for lack of subject matter jurisdiction or for failure to state a claim, the court "do[es] not question 'the truth of what is

[5] Galvin's complaint originally named as a defendant Thomas Harker, who was at that time the Acting Secretary of the Navy. See Compl. at 1. Defendant Carlos Del Toro was sworn in as Secretary of the Navy on August 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Del Toro has been automatically substituted for Harker as a defendant in this action.

asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric., 130 F. Supp. 3d 356, 370 (D.D.C. 2015) (cleaned up) (quoting ACLU Found. of S. Cal. v. Barr, 952 F.2d 457, 467 (D.C. Cir. 1991)). Instead, the court must "take as true all well-pled factual allegations within [the plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 128 (D.C. Cir. 2017) (Rule 12(b)(1) motion); accord, e.g., W. Org. of Res. Councils v. Zinke, 892 F.3d 1234, 1240 (D.C. Cir. 2018) (Rule 12(b)(6) motion). "Although a court may consider materials outside the pleadings to determine whether it has subject-matter jurisdiction over claims," a Rule 12(b)(6) motion "must be decided only on the basis of 'the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice.'" Schieber, 2022 WL 227082, at *4 (cleaned up) (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997)).

## Analysis

The government contends that the judicial review provisions of 10 U.S.C. § 628 forbid Galvin from concurrently seeking review under the APA. It gives three reasons for this conclusion: first, § 628 is a statute that "preclude[s] judicial review" under 5 U.S.C. § 701(a)(1); second, the APA's waiver of sovereign immunity does not apply because § 628(h)(2) "expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702; and third, § 628(g)(2) constitutes an "other adequate remedy in court," removing the SSB's decision from the APA's purview, 5 U.S.C. § 704. See generally Gov't Mot. at 8–12. The first two of these grounds are jurisdictional, e.g., Knapp Med. Ctr. v. Hargan, 875 F.3d 1125, 1128–29 (D.C. Cir. 2017) (statutory preclusion); FDIC v.

Meyer, 510 U.S. 471, 475 (1994) (sovereign immunity), while the third goes to whether the plaintiff has a cause of action under the APA, e.g., Perry Cap. LLC v. Mnuchin, 864 F.3d 591, 620–21 (D.C. Cir. 2017). The Court will take these three grounds in turn. Although the government's reliance on sections 701(a)(1) and 702(2) is misplaced, the Court agrees that section 628(g)(2) provides an adequate alternative remedy that displaces the APA's cause of action.

## I. Preclusion of Judicial Review

The APA's review provisions "appl[y] . . . except to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1); see Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984) ("[Section 701(a)(1)] withdraws [the APA's] cause of action to the extent the relevant statute 'preclude[s] judicial review.'" (third alteration in original)). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block, 467 U.S. at 345. Relying on § 701(a)(1), the government repeatedly contends that the Court must dismiss Galvin's APA claim "because another statute—10 U.S.C. § 628(h)—precludes review except under a different statutory provision." Gov't Mot. at 8; see also id. at 11.

But this framing embeds a fundamental misunderstanding of § 701(a)(1): a statute "preclude[s] judicial review" only if it forbids any judicial review, not if it forbids APA review. This is evident from the text itself: "except to the extent that . . . statutes preclude judicial review." Not "judicial review under the APA"; "judicial review," period. Judicial interpretations of § 701(a)(1) corroborate this understanding. The APA creates a presumption that final agency action is subject to judicial review generally, and § 701(a)(1) is treated as an exception to that basic presumption. See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 139 S. Ct. 361, 370 (2018) ("The Administrative Procedure Act creates a basic presumption of judicial review for one

suffering legal wrong because of agency action. . . . The presumption may be rebutted only if the relevant statute precludes review . . . ." (internal quotation marks and citations omitted) (citing 5 U.S.C. § 701(a)(1))); accord Abbott Lab'ys v. Gardner, 387 U.S. 136, 140 (1967). In Block, for instance, the Court held that the Agricultural Marketing Agreement Act of 1937 precluded milk consumers from seeking review of the Secretary of Agriculture's milk market orders, reasoning that consumer challenges "would severely disrupt [the Act's] complex and delicate administrative scheme." 467 U.S. at 348. Thus, the Court held that "Congress intended that judicial review of market orders . . . ordinarily be confined to suits brought by" other affected parties. Id. In other words, Block was about whether consumers could seek review at all, not whether they could use the APA in addition to a special statutory mechanism.

Here, of course, the parties agree that judicial review of an SSB's determination is available. So although § 628's review provision is relevant to the availability of APA review under § 704, as discussed below,[6] it is clear that § 628 does not "preclude judicial review" of SSB decisions within the meaning of § 701(a)(1). As Chief Judge Howell put it in rejecting the same argument: "[Section] 628(h) does not preclude judicial review of claims . . . and certainly does not contradict the express authority, under § 628(g)[], for judicial review of Board decisions." Gilbert, 134 F. Supp. 3d at 53. This Court accordingly rejects the government's argument that § 701(a)(1) deprives the Court of jurisdiction over Galvin's APA claim.

## II. Waiver of Sovereign Immunity

The government next contends that Galvin's claim under the APA is barred by the United States's sovereign immunity. See Gov't Mot. at 11–12. Section 702 "waives the Government's

[6] Indeed, the existence of § 704's adequate remedy bar further suggests that § 701(a)(1) preclusion focuses on reviewability generally rather than overlap between the APA and a specific procedural mechanism. Otherwise—as amply demonstrated by the government's motion in this case—the two doctrines would be redundant.

immunity from actions seeking relief other than money damages," Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006) (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 260–61 (1999)), but only so long as "no other statute 'impliedly forbids the relief which is sought,'" Yee v. Jewell, 228 F. Supp. 3d 48, 54 (D.D.C. 2017). And because § 628 forbids a court from "grant[ing] any relief" "except as provided in subsection (g)," 10 U.S.C. § 628(h)(2), the government argues that "Congress has 'expressly . . . forbid[den] the relief which is sought'—relief outside of § 628(g)—[and] the waiver of sovereign immunity in § 702 does not apply," Gov't Mot. at 12 (first alteration in original).

Whether another statute forbids the relief a plaintiff seeks is a case-specific, claim-by-claim inquiry. See Transohio Sav. Bank v. Dir., Off. of Thrift Supervision, 967 F.2d 598, 609 (D.C. Cir. 1992) ("To resolve the sovereign immunity and jurisdiction questions, we must consider Transohio's claims individually . . . ."), overruled on other grounds, Perry Cap., 864 F.3d at 621. Moreover, it is not enough that § 628 forbids "relief outside of § 628(g)." Gov't Mot. at 12. Instead, the Court must determine what relief is proscribed and then ascertain whether Galvin is seeking that relief. See Trudeau, 456 F.3d at 186 (concluding that suit fell within § 702's waiver because the plaintiff "has limited the relief he seeks to a declaratory judgment and an injunction" and did not seek money damages).

As a refresher, § 628(h)(2) provides that no court "may . . . grant any relief" on "a claim based to any extent on the failure of a person to be selected for promotion by a promotion board," "except as provided in subsection (g)." Neither party contests that Galvin's present claim is "based

to any extent on [his] failure . . . to be selected for promotion by a promotion board,"[7] so § 628(h)(2)'s limitation applies in this case. And as discussed above, that paragraph mandates that a reviewing court must remand if it finds the SSB's decision arbitrary or capricious; the court may not directly grant the promotion a plaintiff seeks. See, e.g., Gilbert, 134 F. Supp. 3d at 53. The relief "expressly or impliedly forbid[den]" by § 628, then, is everything but remand.

But Galvin does not seek relief other than remand. Rather than ask the Court to order his promotion, he requests only that the Court set aside the SSB's decision and "remand this matter to the agency for further proceedings consistent with the Court's ruling." Compl. at 14. Accordingly, this is not a case where another "statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702—Galvin's requested relief falls squarely within the bounds delineated by § 628. The government's argument to the contrary fails.

## III. Other Adequate Remedy

Finally, the government argues that Galvin's APA claim is barred by § 704's "adequate remedy" rule. See Gov't Mot. at 12. The APA provides for judicial review only of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This provision "reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just., 846 F.3d 1235, 1244 (D.C. Cir. 2017) ("CREW")

[7] This is a closer question than it might seem: "promotion board" as it appears in § 628 refers only to selection boards "convened by the Secretary . . . under . . . [§] 611(a) of this title," i.e., boards that decide promotions in the first instance. 10 U.S.C. § 628(k). But even though Galvin's claims focus on the decision of an SSB rather than a "promotion board," his claim is still "based to any extent" on his four non-promotions between 2010 to 2013, as they are but-for causes of the present lawsuit. In light of Congress's extremely broad "based to any extent" standard, this relationship is sufficient to bring Galvin's claim within paragraph (h)(2)'s ambit. See also Gilbert, 134 F. Supp. 3d at 52–53 ("[B]y its terms, § 628(h) . . . covers a subset of claims . . . where non-selection for promotion is an alleged factual predicate.").

(quoting Bowen, 487 U.S. at 903). "'[I]n determining whether an adequate remedy exists,' courts 'focus on whether a statute provides an independent cause of action or an alternative review procedure.'" R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric., 130 F. Supp. 3d 356, 378 (D.D.C. 2015) (cleaned up) (quoting El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs., 396 F.3d 1265, 1270 (D.C. Cir. 2005)). Moreover, a non-APA remedy "'need not provide relief identical to relief under the APA' in order to have preclusive effect." CREW, 846 F.3d at 1245 (quoting Garcia v. Vilsack, 563 F.3d 519, 522 (D.C. Cir. 2009)). At the same time, "the court must give the APA 'a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'" Garcia, 563 F.3d at 523 (some internal quotation marks omitted) (quoting El Rio, 396 F.3d at 1270). In short, "when an APA claim is 'simply a restatement' of a claim brought under another statute that provides an adequate vehicle for seeking relief, the APA claim 'is properly dismissed' under section 704 of the APA." R.J. Reynolds, 130 F. Supp. 3d at 379 (quoting Mittleman v. U.S. Treasury, 773 F. Supp. 442, 449 (D.D.C. 1991)).

In this case, no one disputes that Galvin may seek review of the SSB's non-promotion decision under § 628(g)(2). E.g., Gov't Mot. at 1. The mere fact that review is available under § 628 suggests that its remedy is adequate and that Congress intended it to be exclusive. See CREW, 846 F.3d at 1244–45. Moreover, Congress also placed express limits on the scope of review under that provision. Although APA review usually requires exhaustion of administrative remedies and usually results in remand to the agency, see generally 33 Wright & Miller, Fed. Prac. and Proc. §§ 8363, 8381 (2d ed. 2021), Congress took no chances when enacting § 628. Paragraph (h)(1) imposes a statutory exhaustion requirement as a prerequisite for judicial review, and paragraph (h)(2) specifically forbids any relief other than remand. 10 U.S.C. § 628(h); accord

Gilbert, 134 F. Supp. 3d at 52–53. These limitations exemplify the deference generally given to the military in selecting its officers, cf., e.g., Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1511, 1514 (D.C. Cir. 1989), and they further support the inference that Congress did not intend for APA review to be available alongside a § 628(g) suit. When Congress so clearly provides an "alternative review procedure" for certain claims—and especially a procedure with express statutory limitations on that review—a court may readily infer "Congress's intent to preclude APA review in that context." Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 131 (D.C. Cir. 2017) (quoting CREW, 846 F.3d at 1245).

Galvin relies heavily on the contention that "there must be 'clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review,'" Pl.'s Opp'n at 6 (quoting Boisson Gonzalez v. Pompeo, 459 F. Supp. 3d 7, 13 (D.D.C. 2020)), and he argues that "[s]ection 628 certainly does not clearly and convincingly bar APA review even if it does create an alternate remedy." Id. But a closer look reveals that this burden is not nearly as weighty as Galvin makes it out to be. The D.C. Circuit has clarified that the necessary preclusive intent can be inferred from the simple fact that Congress "provide[d] an alternative review procedure." Gulf Coast Mar. Supply, 867 F.3d at 131 (quoting CREW, 846 F.3d at 1245); see also El Rio, 396 F.3d at 1270 ("[I]n determining whether an adequate remedy exists, [this court] has focused on whether a statute provides an independent cause of action or an alternative review procedure."). In Gulf Coast Maritime Supply, the court held that a statutory scheme allowing aggrieved parties to appeal the Alcohol and Tobacco Tax and Trade Bureau's revocation of an alcohol permit to a court of appeals barred APA challenges to such revocations in district courts. 867 F.3d at 131. Congress's creation of this "alternate review procedure," the court concluded, was sufficient to "demonstrate[] Congress's intent to preclude APA review in that context." Id.

The more intense burden Galvin envisions runs into several problems. For one, there is no textual basis for such a requirement, as § 704 is concerned only with whether an "adequate remedy in a court" exists. Furthermore, in its full context, the phrase to which Galvin clings merely requires courts to be sure of Congress's intent before "restrict[ing] access to judicial review." Garcia, 563 F.3d at 523 (quoting El Rio, 396 F.3d at 1270).[8] When an adequate, alternative remedy in court exists, dismissing a concurrent APA claim does not "restrict access to judicial review." Finally, it is well-established that when an applicable special statutory scheme vests review in the courts of appeals, district courts lack jurisdiction to hear APA claims if "[preclusive] intent is 'fairly discernible in the statutory scheme.'" Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994)); accord, e.g., Elgin v. Dep't of Treasury, 567 U.S. 1, 9–12 (2012). It would be incongruous to deprive district courts of jurisdiction based on "fairly discernible" intent only for § 704's non-jurisdictional bar to require "clear and convincing evidence" of that same intent. Instead, the focus of the § 704 inquiry is the adequacy of the remedy, and the mere creation of an alternate review procedure implicates that analysis without any heightened showing of preclusive intent. Cf. City of Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979) ("If, however, there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.").

Applying this standard to the present case, the Court easily concludes that the remedy provided by § 628 is "adequate." Although the statute includes some limitations on relief, they largely duplicate restrictions that courts routinely impose on APA challenges: exhaustion of

[8] This makes perfect sense in light of the quotation's origin in the Supreme Court's Abbot Laboratories opinion, which dealt with whether a statute "bar[red] agency action not within its purview from judicial review," 387 U.S. at 139–41, not whether a duplicative APA claim could proceed alongside an adequate alternative.

administrative remedies and a strong preference in favor of remand.  Indeed, Galvin does not ask for relief barred by § 628, so proceeding solely under § 628(g)(2) would not prejudice him in any way.  Furthermore, the substantive standard for review under § 628(g)(2)—"arbitrary or capricious; not based on substantial evidence; a result of material error of fact or material administrative error; or otherwise contrary to law"—is essentially identical to the APA's standard.  E.g., Gilbert, 134 F. Supp. 3d at 54 ("[T]he standard of review under § 628(g) 'largely echoes' the arbitrary and capricious standard provided under the APA." (quoting Homer v. Roche, 226 F. Supp. 2d 222, 225 (D.D.C. 2002))); but cf. Miller v. Dep't of Navy, 476 F.3d 936, 938 (D.C. Cir. 2007) ("[Courts] are obligated to apply [§ 628(g)'s] standard in an 'unusually deferential' manner when reviewing personnel decisions made by the military." (quoting Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000))).  Review under § 628(g)(2) is not only an adequate substitute for the APA—it is nearly identical.

The adequacy analysis in CREW is instructive.  In that case, the D.C. Circuit held that FOIA "offer[ed] an 'adequate remedy' . . . such that CREW's APA claim [wa]s barred," 867 F.3d at 1246, even though FOIA did not permit some of the injunctive relief CREW sought, id. 1243–44.  Importantly, the court noted that a remedy need not be identical to the APA to be adequate, and it concluded that FOIA's authorization of judicial review with certain limitations "suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired."  Id. at 1245.  Here, as in CREW, there is "no yawning gap between the relief [§ 628] affords and the relief [Galvin] seeks under the APA," id. at 1246—indeed, there is no gap at all.  And § 628(h)'s limits on review under § 628(g) suggest that Congress struck a particular and intentional "balance between statutory duties and judicial enforcement." Id. at 1245.  In short,

§ 628 is "precisely the kind of 'special and adequate review procedure' that Congress immunized from 'duplicative' APA review." Id. at 1246 (cleaned up) (quoting Bowen, 487 U.S. at 903).

Galvin quarrels with none of this. Instead, he contends that § 628(g) does not provide an adequate remedy because it uses the word "may," Pl.'s Opp'n at 6: "a court of the United States may review" and "a court may set aside the action," 10 U.S.C. § 628(g)(2) (emphases added). According to Galvin, this means that judicial review of SSB decisions is discretionary, and since the APA (which uses the word "shall") provides for mandatory review, "[a]n uncertain, discretionary remedy is by its very nature inadequate when a mandatory remedy also exists." Pl.'s Opp'n at 6. But Galvin's reliance on "may" is unpersuasive. Although "[t]he word 'may,' when used in a statute, usually implies some degree of discretion," "[t]his common-sense principle of statutory construction is by no means invariable . . . and can be defeated by . . . obvious inferences from the structure and purpose of the statute." United States v. Rodgers, 461 U.S. 677, 706 (1983). In short, a court "cannot . . . consider ['may' and 'shall'] in isolation," Sierra Club v. Jackson, 648 F.3d 848, 856 (D.C. Cir. 2011), and must instead look to other statutory clues—as well as common sense—in arriving at the best interpretation of the provision at issue.

Galvin does precisely what courts cannot: he considers the word "may" in isolation and ignores the consequences. By reading "may" to denote discretion, Galvin suggests that this Court, for any reason or no reason at all, may simply decide not to hear his claim. An abstention regime of this sort would be quite extraordinary. Whether a court will hear a case is not usually dependent on whether the judge feels like it; to the contrary, where a court possesses subject-matter jurisdiction—as is uncontested with respect to Galvin's § 628(g) claim—its "'obligation' to hear and decide a case is 'virtually unflagging.'" Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 77 (2013) (quoting Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976)).

Likewise, under Galvin's reading of § 628(g)(2)'s "may set aside" language, a court could choose to consider an SSB decision, determine that it was unlawful, but then just refuse to set it aside or grant any relief. Such a regime would flout the elementary principle that every wrong has a remedy. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803). It is simply not plausible that Congress enacted such an unprecedented and arbitrary scheme to govern review of SSB decisions; at the very least, the Court is confident that it would not have done so simply by using the word "may." Cf. Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

What's more, Galvin's interpretation has not prevented other courts from holding that judicial review schemes using the word "may" constitute adequate alternative remedies under § 704. Two courts in this District have already held that § 628(g)(1)—which uses identical "may" language—is an adequate and exclusive mechanism for challenging a decision not to convene an SSB. See Gilbert, 134 F. Supp. 3d at 53; Paylor v. Winter, 600 F. Supp. 2d 117, 123 n.4 (D.D.C. 2009).[9] In addition, several courts have held that 49 U.S.C. § 1153(a), which provides that the D.C. Circuit or other relevant court of appeals "may review a final order of the National Transportation Safety Board," is an adequate remedy preclusive of APA review. See, e.g., Dresser v. Meba Med. & Benefits Plan, 628 F.3d 705, 710–11 & n.39 (5th Cir. 2010) (so holding and

[9] Galvin argues that other courts in this District have permitted APA and § 628(g) claims to proceed side-by-side. See Pl.'s Opp'n at 7–8. But none of those cases involved a motion to dismiss the APA claim, nor did any of those courts ever advert to—not to mention provide any reasoning regarding—the concurrent causes of action. A court's failure to raise a non-jurisdictional issue sua sponte is hardly persuasive precedent; Galvin's purported split of authority is specious.

collecting cases). And Congress has enacted several other review provisions using the word "may," all of which would be infected with the absurdity outlined above.[10]

Instead of creating a discretionary judicial review regime, "may" in § 628(g) is better read as "is permitted to." Interpreted as such, this is not a situation in which the alternate review scheme offers only "doubtful and limited relief," Garcia, 563 F.3d at 522 (quoting Bowen, 487 U.S. at 901); rather, there is "no 'uncertainty [about] the availability of a remedy' under [§ 628(g)] for the wrongs that [Galvin] has alleged," Feinman v. FBI, 713 F. Supp. 2d 70, 78 (D.D.C. 2010) (first alteration in original) (quoting El Rio, 396 F.3d at 1272–73). As such, § 628(g)(2) is an "adequate remedy in a court" and therefore constitutes the exclusive means by which an officer may challenge the non-promotion decision of a special selection board. Since Galvin's "APA claim is 'simply a restatement' of a claim brought under another statute that provides an adequate vehicle for seeking relief," it "'is properly dismissed' under section 704." R.J. Reynolds, 130 F. Supp. 3d at 379 (quoting Mittleman, 773 F. Supp. at 449).

## Conclusion

For the reasons set forth above, the Court will grant the government's partial motion to dismiss for failure to state a claim. Although 10 U.S.C. § 628 neither "preclude[s] judicial review" within the meaning of 5 U.S.C. § 701(a)(1) nor "forbids the relief which is sought" for purposes of 5 U.S.C. § 702, it does provide an adequate alternative remedy for challenges to SSB decisions. Accordingly, the SSB's decision is not an "action . . . subject to judicial review" per 5 U.S.C.

[10] E.g., 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien . . . [and] another court has not decided the validity of the order . . . ."); 12 U.S.C. § 216b(f)(2) ("The United States Court of Federal Claims may set aside actions of the Comptroller only if such actions are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

§ 704, and Galvin cannot state a claim for relief under the APA. An accompanying Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: February 18, 2022