UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRED C. GALVIN,<br><br>    Plaintiff,<br><br>v.<br><br>CARLOS DEL TORO, Secretary of the Navy, et al.,<br><br>    Defendants. | Civil Action No. 21-1813 (JDB) |

MEMORANDUM OPINION

Plaintiff Fred C. Galvin spent over two decades in the United States Marine Corps, during which time he "accumulated a stellar service record." Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross-Mot. for Summ. J. [ECF No. 23] ("Pl.'s Mot.") at 1; see also Galvin v. Del Toro, 586 F. Supp. 3d 1, 7–8 (D.D.C. 2022) (describing the factual background of this case). But his stellar record was blemished: until recently, Galvin's official military file included two adverse fitness reports, and Galvin was passed over for promotion numerous times. See Compl. [ECF No. 1] at ¶¶ 19, 31–32. Following a review and withdrawal of the adverse fitness reports, the Navy convened a special selection board ("SSB") to evaluate his candidacy for promotion in light of the corrected record. Id. ¶¶ 34–40. But even on the corrected record, the SSB did not recommend Galvin for promotion. Id. ¶ 49. Galvin seeks a review of the SSB's decision, arguing that it was arbitrary and capricious. For the reasons set forth below, the Court concludes that the SSB's decision survives review and will grant summary judgment to defendants.

1

I.   BACKGROUND

    A.  **Statutory Background**

Eligible candidates for promotion in the military are evaluated by "selection boards." See 10 U.S.C. § 611(a). These selection boards consider, among other things, candidates' "official military personnel file," id. § 615(a)(2)(A), and "recommend for promotion to the next higher grade those officers . . . whom the board . . . considers best qualified for promotion," id. § 616(a); see also id. § 616(c)(3) ("A selection board . . . may not recommend an officer for promotion unless . . . a majority of the members of the board . . . finds that the officer is among the officers best qualified for promotion to meet the needs of the armed force . . . .").

Normally, the Secretary of the relevant military department convenes a selection board "[w]henever the needs of the service require." 10 U.S.C. § 611(a). However, the statutory scheme provides for "special selection boards" outside the normal course under certain circumstances. Relevant here, where the Secretary "determines . . . that there was material unfairness" in a candidate's initial consideration by a selection board, "the Secretary may convene a special selection board" to determine whether the candidate "should be recommended for promotion." Id. § 628(b)(1).

The SSB then considers "the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that [previously] considered him," with the document(s) that created material unfairness removed. 10 U.S.C. § 628(b)(2). The SSB compares that record with "the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that [previously] considered him." Id.

Upon reaching a decision as to its promotion recommendation, every selection board—whether an SSB or not—must submit a written report that follows a statutorily defined procedure.

2

SSBs must "submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing the name of each person it recommends for promotion and certifying that the board has carefully considered the record of each person whose name was referred to it."  10 U.S.C. § 628(c)(1).

Courts may "review the action of a special selection board convened under this section" and "set aside the action only if the court finds that the action was [] (A) arbitrary or capricious; (B) not based on substantial evidence; (C) a result of material error of fact or material administrative error; or (D) otherwise contrary to law."  10 U.S.C. § 628(g)(2).  Otherwise, no court "may, with respect to a claim based on any extent of the failure of a person to be selected for promotion by a promotion board . . . except as provided in subsection (g), grant any relief on the claim."  Id. § 628(h).

Congress also prohibited the disclosure of "[t]he proceedings of a selection board," including SSBs.  10 U.S.C. § 613a(a).  It further determined that "[t]he discussions and deliberations of a selection board . . . and any written or documentary record of such discussions and deliberations" may not be "used for any purpose in any action, suit or judicial or administrative proceeding without the consent of the Secretary of the military department concerned" including being "admitted as evidence."  Id. § 613a(b).

B. Factual Background[1]

Plaintiff Fred Galvin is a retired Marine Corps major.  See Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. [ECF No. 21-1] ("Defs.' Mot.") at 6.  Following a decorated career, he was eligible for promotion from major to lieutenant colonel several times.  Id.  Four selection

---

[1] These facts are largely taken from the government's motion for summary judgment.  Galvin "does not contest" the relevant facts in the government's motion.  Pl.'s Mot at 2.  A more fulsome discussion of the underlying facts can be found in Galvin, 586 F. Supp. 3d at 7–8.

boards were convened to consider him for promotion, and four times he was passed over. Id. at 6 & n.9. The record before those boards included an "adverse fitness report,"[2] which criticized Galvin for his actions in overseas combat during a "firefight following an ambush and also because some Marines under his command had undertaken a mission in a restricted area." Id. at 6. Galvin eventually retired in 2014. Compl. ¶ 33.

In 2018, following a review of the facts underlying the adverse fitness report, a Marine Corps "court of inquiry" exonerated Galvin of any wrongdoing and the Marine Corps Board for Correction of Naval Records ("BCNR") removed the adverse fitness report from his file. Defs.' Mot. at 6–7. The BCNR also recommended that an SSB be convened to consider Galvin for promotion. Id. at 7. The SSB would "reconsider Major Galvin's promotion based on his record as it appeared before the Fiscal Year 2012 Lieutenant Colonel Promotion Selection Board." Id. The Assistant Secretary of the Navy for Manpower and Reserve Affairs accepted that recommendation and convened an SSB. Id. The record before the SSB did not include the adverse fitness report, and the SSB nonetheless did not recommend Galvin for promotion. Id.

In explaining its decision, pursuant to 10 U.S.C. § 628(c)(1), the SSB submitted to the Secretary a report certifying that Galvin was "in the opinion of the majority of the members of the board . . . not comparable to those officers who were selected for promotion before the [previous board to consider him]." Administrative Record ("AR") 46.[3]

### C. Procedural History

Galvin filed a complaint on July 7, 2021, alleging violations of 10 U.S.C. § 628 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. See Compl. In September 2021,

---

[2] The second adverse fitness report was issued after the period considered by the special selection board in this case. Defs.' Mot. at 6 n.9.

[3] Relevant sections of the administrative record are found in the Joint Appendix [ECF No. 29].

defendants moved to dismiss Galvin's APA claim, arguing that § 628 prevents Galvin from seeking relief under the APA. See Defs.' Mem. of P. & A. in Supp. of Defs.' Partial Mot. to Dismiss [ECF No. 12-1]. This Court granted the partial motion and dismissed Galvin's APA claim. See Galvin, 586 F. Supp. 3d at 11–15.

In April 2022, defendants filed a motion for summary judgment on the remaining claim. See Defs.' Mot. Galvin filed an opposition and a cross-motion for summary judgment. See Pls. Mot.[4] Defendants filed a reply in support of their motion and opposition to Galvin's motion. See Defs.' Combined Opp'n to Pl.'s Mot. and Reply in Supp. of Defs.' Mot. [ECF No. 26] ("Defs.' Reply").[5] Finally, Galvin replied in support of his motion, see Pl.'s Reply in Supp. of Pl.'s Mot. [ECF No. 28], and filed the joint appendix, see Joint Appendix. The cross-motions for summary judgment are thus ripe for decision.

## II. ANALYSIS

### A. Standard of Review

In reviewing agency decisions, "the district judge sits as an appellate tribunal," and the "'entire case' on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record . . . ." Styrene Info. & Rsch. Ctr., Inc. v. Sebelius, 944 F. Supp. 2d 71, 77 (D.D.C. 2013) (quoting Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted

---

[4] This document is also docketed as ECF No. 24.

[5] This document is also docketed as ECF No. 27.

5

the agency to make the decision it did." Stuttering Found. of Am. v. Springer, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (internal quotation marks omitted).

The parties' first disagreement concerns the standard of review the Court should apply when reviewing the SSB's decision not to recommend Galvin for promotion. As this Court previously observed, "the substantive standard for review under § 628(g)(2)—'arbitrary or capricious; not based on substantial evidence; a result of material error of fact or material administrative error; or otherwise contrary to law'—is essentially identical to the APA's standard."[6] Galvin, 586 F. Supp. 3d at 13. Given this similarity, Galvin argues that the traditional APA standard of review—which, he notes, requires sufficient agency explanation—should be applied here. See Pl.'s Mot. at 6 ("[A]n agency action that lacks explanation is a textbook example of arbitrary and capricious action." (quoting Mori v. Navy, 917 F. Supp. 2d 60, 64 (D.D.C. 2013))). Galvin argues that the SSB did not provide an adequate explanation for its decision under this standard and thus it should be set aside as arbitrary and capricious.

Defendants disagree. They contend that "ordinary APA principles that require a certain degree of elaboration on the agency's reasoning do not apply here." Defs.' Mot. at 8. In support, they point to two quirks of SSB non-promotion decisions: (1) "Congress has specified the content of the SSB's reports recommending the promotion or non-promotion of the officers it considers," id. (citing 10 U.S.C. § 628(c)(1)), and (2) "Congress has broadly precluded the disclosure of the SSB's proceedings, including the 'discussions and deliberations of a selection board,'" id. at 8–9 (quoting 10 U.S.C. § 613a). Given the statutory scheme established by Congress for these types of decisions, defendants argue, the explanation given by the SSB—the statutorily mandated

---

[6] The APA authorizes courts to set aside agency action found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by law," as well as "unsupported by substantial evidence" in certain cases. 5 U.S.C. § 706.

statement that it considered Galvin's record and a majority of the SSB concluded that he was not comparable to the officers who were selected for promotion in the relevant year—is sufficient. Id. at 10–14.

The APA's requirement "that an agency action [not be] arbitrary and capricious or otherwise contrary to law[] imposes a general 'procedural' requirement of sorts by mandating that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." Pension Ben. Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990). In many instances, a fulsome explanation might be required—to demonstrate, for example, that the agency relied on the factors Congress intended it to, or that it considered all the evidence before it. See, e.g., Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) ("[T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). But even when an agency "could have explained its reasons for rejecting [the] arguments in more detail," courts only require that the "decision minimally contain a rational connection between the facts found and the choice made." Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks omitted).

The standard of review under the APA discussed above can vary from case to case. Relevant here, courts "are obligated to apply [the arbitrary and capricious] standard in an 'unusually deferential' manner when reviewing personnel decisions made by the military." Miller v. Dep't of Navy, 476 F.3d 936, 938 (D.C. Cir. 2007) (quoting Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000)).

Congress has spoken with unusual specificity about the procedures employed by military promotional boards, including SSBs. Congress described the action required by the SSB: it must

"consider the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that considered him," and must compare it to "the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him." 10 U.S.C. § 628(b)(2). And Congress described the SSB's output: it must submit a "written report, signed by each member of the board, containing the name of each person it recommends for promotion and certifying that the board has carefully considered the record of the person whose name was referred to it." Id. § 628(c)(1). Congress also provided that "[a] court of the United States may review the action of a special selection board." Id. § 628(g)(2).

The Court thus must conduct a review, but its review is limited to the action prescribed by Congress: did the SSB consider an officer's, such as Galvin's, record as Congress intended? The answer can be found, in most instances, in the report from the SSB: if it certifies that it did, in fact, consider the correct record and compare it to those of contemporaneous officers as mandated by Congress, then its action was legally sound. The Court is hesitant to conduct any more searching review—for example, holding that the SSB must explain why each member of the board voted the way they did, or what factors specifically influenced the members' voting decisions. Two principles caution against such an inquiry.

First, as discussed above, courts are unusually deferential to military decisions, and particularly so with respect to promotion decisions. See, e.g., Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989) ("This court is not competent to compare appellant with other officers competing for such a promotion."). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a

result that would destabilize military command and take the judiciary far afield of its area of competence." Cone, 223 F.3d at 793.

Second, the Court is hesitant to require more of an SSB than Congress has. See Richey v. United States, 322 F.3d 1317, 1326–27 (Fed. Cir. 2003) ("The court could not require the SSBs to meet additional reporting requirements beyond those that were mandated by the statute." (citing Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, 435 U.S. 519, 548 (1978))). Congress has expressed a clear desire to have the SSBs work in a particular way: Congress specified the evidence the SSB should consider (the modified record), how members of the Board should make their decision (by comparing the record to those of others), and instructed the SSB to show compliance with those requirements by a simple written report. "[U]nwarranted judicial examination of perceived procedural shortcomings of [agency action] can do nothing but seriously interfere with that process prescribed by Congress." Vt. Yankee Nuclear Power, 435 U.S. at 548.

The prohibitions in 10 U.S.C. § 613a further confirm that Congress did not intend for SSBs to provide a more fulsome explanation. "The proceedings of a selection board," including SSBs, "may not be disclosed to any person . . . except as authorized or required to process the report of the board." 10 U.S.C. § 613a(a). Further, the "discussions or deliberations" including "any written or documentary record" of them "(1) are immune from legal process; (2) may not be admitted as evidence; and (3) may not be used for any purpose in any action . . . without the consent of the Secretary of the military department concerned." Id. § 613a(b).

The government thus argues that 10 U.S.C. § 613a prohibits SSBs from disclosing "reasons for making the recommendations it does." Defs.' Mot. at 13. The Court does not agree that this provision necessarily prevents the SSB from giving any further information about its decision-making process. See Richey, 322 F.3d at 1327 (expressing skepticism that an analogous provision

always precludes review). But this provision does confirm that Congress has a specific view on what, if anything, SSBs can and should disclose about their decision-making. Particularly given the method of SSB decision-making—a majority vote—it is difficult to imagine how an SSB would routinely provide a more unified reason for its decision-making without veering dangerously close to disclosing its internal "discussions or deliberations." Each voting member may have weighted the evidence differently, and asking each member to disclose further layers of reasoning would be difficult (though perhaps not impossible) to do without revealing internal deliberations or documents. Cf. Miller v. Dep't of Navy, 601 F. Supp. 2d 90, 93 & n.3 (D.D.C. 2009) (noting that under § 613a, the Secretary withheld records memorializing, among other things, "the results of deliberations of the board[] and selection statistics").

Galvin cites numerous cases where courts have remanded agency decisions based on failure to explain under 10 U.S.C. § 628(g). See Pl.'s Mot. at 5–7. Most of those cases, however, addressed a different decision: that of the Secretary declining to convene an SSB in the first place. See, e.g., Mori, 917 F. Supp. 2d at 64 (finding a decision denying plaintiff's SSB request arbitrary and capricious as it failed to fully explain its reasoning).[7] That decision is categorically different from the SSB's decision about whether to recommend promotion. Congress did not identify the factors that the agency should consider in the decision to convene an SSB, see 10 U.S.C. § 628(b)(1) (providing that an SSB may be convened "[i]f the Secretary of the military department concerned determines . . . that there was material unfairness"), nor the method of reporting the

---

[7] One case cited by Galvin did concern a non-promotion recommendation by an SSB. In Homer v. Roche, the court noted that the SSB gave "no affirmative reason for why plaintiff was not selected for promotion," stating only that "the selection process is highly competitive." 226 F. Supp. 2d 222, 226 (D.D.C. 2002) (internal quotation marks omitted). The Homer court thus observed that it had no way of knowing if the decision was due to an incorrect record, "because there were others more qualified," or some other reason. Id. Here, the SSB certified that it considered the amended record and that it determined Galvin's record was not comparable to those who had been promoted. The Homer court's reasoning thus has limited applicability here.

Secretary's decision. The decision under § 628(g) to convene an SSB is thus a more traditional decision-making process that may require elaboration. In contrast, Congress finely crafted the procedures and relevant considerations for SSBs once they are convened to reconsider a non-promotion decision. The cases Galvin cites are thus of limited use.

In sum, in the context of SSB non-promotion decisions, a statement from the SSB certifying that it has conducted the relevant inquiry, "disclos[ing] the factors that were considered," Overton Park, 401 U.S. at 420—namely, Galvin's record as compared to those of others—and reporting its decision as prescribed by Congress provides the Court with sufficient information to "evaluate the agency's rationale at the time of the decision," Pension Ben. Guar., 496 U.S. at 654. This Court thus joins the Richey court and others in this District finding that "the statute imposes no requirement on the SSBs to provide detailed findings" and an explanation in line with the statutory requirements is generally sufficient. 322 F.3d at 1326; accord Cochrane v. Wynne, 541 F. Supp. 2d 267, 271–72 (D.D.C. 2008) (holding that "the SSB complied with all of the statutory reporting requirements under § 628(c)(1)" by filing a written report); Chambers v. Green, 544 F. Supp. 2d 10, 14 (D.D.C. 2008) (similar). The SSB here certified that Galvin was,

> in the opinion of the majority of the members of the board, not fully qualified or, when compared to the officers whose sample records were considered, is not better qualified for promotion than all of the officers who failed selection for promotion before the FY12 USMC Lieutenant Colonel Promotion Selection Board and is not comparable to those officers who were selected for promotion before the FY12 USMC Lieutenant Colonel Promotion Selection Board.

J.A. [ECF No. 29] ("AR") at 46.[8] That certification provides sufficient explanation, and thus the Court concludes that the decision was not on its face arbitrary or capricious.

---

[8] References to the AR will correspond to the internal pagination of the document rather than the PDF pagination.

11

### B. Presumption of Regularity

Even with the limited review permitted under the statute, Galvin may still rebut the "presumption of regularity"—i.e., that the SSB's decision was not arbitrary or capricious—with sufficient record evidence. See Richey, 322 F.3d at 1326–27; see United States v. Chem. Found., Inc., 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). Galvin claims a number of irregularities in the record that he believes overcome this presumption.

First, he argues that a comparison of his fitness report scores against those of individuals who were promoted in the relevant year should "raise[] a red flag." Pl.'s Mot. at 13. In support, he attaches the results of two studies compiling statistics about the fitness report scores of military personnel who were eligible for promotion, see Decl. of Maj. Fred C. Galvin (USMC, Ret.) ("Galvin Decl.") [ECF No. 23-1] at 25, 27, noting that his scores are above the mean scores of those selected for promotion, Pl.'s Mot. at 13.

As an initial matter, these studies are of somewhat limited value. Neither presents any data on the Fiscal Year ("FY") 2012 selection board outcomes specifically (those the SSB used for comparison), and one did not begin collecting data until FY 2013. See Galvin Decl. ¶ 32. But more importantly, the "court lacks the special expertise needed to review . . . officers' records and rank them on the basis of relative merit." Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990); see Kreis, 866 F.2d at 1511 (noting that courts are "not competent to compare" one officer "with other officers competing for such a promotion"). Promotion decisions are not based solely on numbers, and the members of the SSB were under no obligation to assign more weight to the fitness scores than, say, the fact that Galvin had no "record of combat deployment in his nearly five years as a major," Defs.' Reply at 7. Thus, even if the Court concluded that the score disparity

12

was significant, it could not then infer that the SSB's decision-making process was therefore flawed in some way. Put simply, the Court cannot draw any conclusions from the raw data, particularly when compared only to aggregate data across many years and many selection boards. See, e.g., Haselrig v. United States, 53 Fed. Cl. 111, 127 (2002) ("While statistical data can raise the question of whether or not SSB procedures may be flawed, the data itself is not dispositive on the issue."), aff'd, 333 F.3d 1354 (Fed. Cir. 2003).

Galvin also raises numerous complaints about the state of the administrative record. See Pl.'s Mot. at 11–12. For example, some of the pages have highlighting and marking on them.[9] But none of these criticisms offer any reason to believe that the SSB's process was irregular in any way. Galvin also notes that there is reference to the media coverage of his attempts to clear his name regarding the firefight overseas in the administrative record. See AR at 5, 90. However, those references are in internal routing documents that Galvin does not allege were ever seen or considered by the SSB. See Defs.' Reply at 9 n.6 (noting that Galvin's record—which was considered by the SSB—appears in the administrative record at AR 219–535). Galvin also takes issue with the exclusion of certain documents from the administrative record but (particularly in light of the government's explanation and subsequent production of the documents) fails to explain the relevance of any omission to his claim.[10] His final qualm with the administrative record is the language used by the SSB in certifying its report. It is not entirely clear what his objection is, but the government provides a sufficient explanation of the legal basis of the precise language that the

---

[9] The government submitted a declaration from Steven Milewski, Deputy Director of the Navy's Administrative Law Division, which "review[s] SSB packages for form and legality." Defs.' Reply at 9–10. The declaration explains that the markings on the pages are a typical part of the review process of SSB decisions and indicate harmless actions such as correcting errors and indicating the type of paper to be printed on. Id.

[10] According to the government, the documents Galvin complains about were either produced after the Secretary's action approving the SSB's report (e.g., the signed approval itself), or never existed. See Defs.' Reply. at 10–11.

SSB used in the report, and absent further explanation of Galvin's issue with it, the Court does not see the relevance.

Galvin's final claim of irregularity is that one member of his SSB "is a U.S. Marine Corps colonel who has been implicated in unethical conduct in another case." Pl.'s Mot. at 14. Colonel Christopher B. Shaw's conduct, as described in Galvin's motion and the news coverage Galvin cites, is certainly concerning. See Pl.'s Mot. at 14–15 (describing Shaw's threat to a junior defense counsel: "Our community is small and there are promotion boards and the lawyer on the promotion board will know you"). But unfortunately for Galvin, it is not particularly relevant to his claim. He must show through "clear evidence" that there were irregularities in his case. See Chem. Found., 272 U.S. at 14–15. Galvin fails to connect Colonel Shaw's misconduct to his SSB and thus has not given the Court a reason to believe the proceeding here was tainted in any way. See, e.g., Santini v. Comm'r of Soc. Sec., 413 F. App'x 517, 520 (3d Cir. 2011) ("While we recognize that certain district courts in this Circuit have questioned [the judge's] objectivity in other circumstances, [petitioner] fails to point to any specific evidence of bias here . . . ." (footnote omitted)). Colonel Shaw's statement threatening that a member of a promotion board might retaliate against people unrelated to Galvin's promotion decision is simply not compelling or relevant enough to warrant a finding that Galvin's proceeding was deficient.[11]

Given that Galvin has "presented no record evidence to rebut the presumption of regularity, the court ha[s] no authority to require . . . the SSB[] . . . to provide further explanation." Richey, 322 F.3d at 1327.

---

[11] Moreover, Colonel Shaw's conduct was occurred and was unearthed after Galvin's SSB convened. Permitting challenges to administrative decisions issued by a decisionmaker who later is accused of unrelated misconduct would invite numerous baseless challenges and undermine the finality of administrative decisions.

## III.  CONCLUSION

For the foregoing reasons, the Court finds that Galvin has not demonstrated that the SSB's action was arbitrary or capricious, not based on substantial evidence, the result of material error of fact or material administrative error, or otherwise contrary to law, the standard applicable here under 10 U.S.C. § 628(g)(2).  The Court will accordingly grant defendants' motion for summary judgment and deny Galvin's cross-motion for summary judgment.  A separate Order consistent with this opinion will issue.

/s/
JOHN D. BATES
United States District Judge

Dated: February 7, 2023